Our last case for the day is 24-1661, Zip Top v. SC Johnson & Son. All right, Mr. Banner, let's go. May it please the Court. Brian Banner on behalf of Appellant. I'd like to touch on two issues today, the first being the Court's errant claim construction and the intrinsic evidence related to that issue. And the second issue being the Court's error in ignoring plaintiff's evidence of infringement and instead granting summary judgment. Could we get you to start instead with standing, please? Absolutely, Your Honor. Since you just mentioned that, and that's the first step. Sure, Your Honor. I think that the standing issue, you know, I tend to duress on the briefing, but I think the Olopec's decision, which is cited in the appellee's brief, is determinative. That decision said that if a party had standing when the notice of appeal was filed, this Court has jurisdiction because that's when jurisdiction attached. And that's the Olopec's decision at 948. So in the red brief, we note that at Appendix 5500, the notice of appeal was filed on April 4th, and the assignment of the patent, which is at Appendix 5505, was not done until April 10th. I don't disagree based on the facts that you had standing when you filed the notice of appeal. I'm just wondering if you still had standing. Yes, we do, Your Honor. How so? Because the—in fact, I think the—that there's no defect here in the standing because the zip top, the bankrupt, now defunct company that sustained the injury was the one who filed the appeal. And the— Yes, but you're here on behalf of zip top, correct? Correct. The zip top does not own the patent anymore, correct? Zip top does not own the patent, but the— And zip top does not—did not convey to the purchaser of the company who acquired the patent the right to sue for past infringement or the right to recover for past infringement, correct? I do not think that that is in the record, Your Honor. It is. You filed the assignment. Correct. What—or what page, Ruth? You know? Oh, it's 5—the assignment is at— 5505. 5505. 5505. 5505. You filed the assignment. Yes. With us. And that assignment does not, unless there is some subsequent revision of the assignment, which you didn't file, but you gave us the assignment for this very patent. Correct. And in that assignment, you do not convey the right to sue for past infringement, right? Correct, Your Honor, but this appeal is not a proceeding that is suing for past infringement. That was—and like we said in our—I think the appropriate— The lawsuit sued for past infringement and for future infringement by seeking an injunction, correct? Correct. The lawsuit, you sought— Yes, Your Honor. Right. So are you—is it your view that someone who doesn't possess a patent any longer somehow has the right to all by themselves do an appeal, which could impact not just the rights they had when they owned the patent, i.e. possibly past infringement, but also the rights for the future—the person who now owns the patent? Do you think that you ought to single-handedly be allowed to manage that appeal and not join the now real party and interest owner of the patent? Well, Your Honor, I think that that would be appropriate, as we said in our briefing, if and when this gets remanded to the district court, because that's the point at which that remedy is being requested. Now, here's the problem. I am going to decide in this case issues that don't just bind you, zip tie or zip top, sorry, but I'm going to be deciding something that also binds the people that now own the patent, right? Because this is a lawsuit for not just past damages that are in the rearview mirror, but future performance. So why would I—why is it appropriate for me to do that without them being present in this suit? Well, certainly that's going to bind them regardless because they're the successor and interest to all the rights and liabilities of zip top. You know, I think that, as we said in our briefing, we are happy to file a motion with this court substituting parties. The problem I have with that is that the case on which the appellees relied to say that there was no standing says that you can't substitute a party later that didn't have standing at the time of the notice of appeal. So we're kind of in a little bit of a— How about Joinder? What if I let you join him? Wait a second. Go ahead. I mean, what is it—I thought substitution during the pendency of an appeal is authorized by both FRAP— Yeah. —by FRAP, which kind of—was it 41? 43. 41, right. I believe it's FRAP 43. 43, okay. Yes. When we kind of borrow Civil Rule 25 for most things, but when events occur after the notice of appeal, like the veteran dies and then the surviving spouse wants to be—you said that's perfectly fine. That's correct. So why not here? Well, because as the—and I'm drawing a blank on the case that was referred to in the appellee's brief. I apologize. But that case said that a person could not come in later, and it was in a situation where there wasn't a death. It's the other section of FRAP 43 said that person who didn't have standing at the time of the notice of appeal could not be substituted. That's what the case said. So there are clearly exceptions to that. And so, you know, we're ready and willing to submit a motion, but I think we're going to—it's going to be— you know, I would suspect that it's going to be opposed for that very reason. And so— What do you know or are you—what are you authorized to say about whether LGI is ready and willing to come into the case, either jointly with you or as a substitute? Absolutely any way that is required to cure—if there is a defect in standing to cure that defect, LGI is ready and willing to do whatever it takes. What about joinder as distinct from substitution? Okay. How do you feel about joinder? I'm not opposed to joinder. Would you like to make an oral motion for joinder? I—sure. On behalf of whom? On behalf of— Everybody? How about everybody?  All three of the—so these are all put in our certificate of interest, the two other parties. So Let's Gel is the parent. There's a fully-owned sub that's zip-top something. I have it probably right here in front of me. But I would like to move on behalf of all those other—the two other entities to be joined to this case to cure any potential standing defects. Okay. And you believe you have authority? Yes, I absolutely do have authority. And then we can decide it on the briefing of this argument. Correct. Okay. Why don't you move on to the merits? Okay. So on the other issues, the case turns on a single legal error in claim construction, and that is the district court rewrote the claim term spout to exclude the very embodiments that are disclosed and discussed in the specification. That narrow reading added a negative limitation, something that's not supported by the specification, the claims, or the prosecution history. So how did we get here? Well, in the briefing below, both parties agreed on the plain meaning of spout as a distinct feature that directs liquid from and facilitates the pouring of fluid from a container. But the district court went further. At Appendix 12, it said, quote, The zipper members are not the spout or part of it. Rather, the spout is a separate feature. That added phrase was the entire problem. Every embodiment in the 890 patent describes a unitary molded container where the spout includes the end portion of the zipper members, where the zipper members meet. What does the word distinct then mean? How should the word distinct be construed? So the distinct, I worry that we're construing a construction. It was your construction, or at least you don't disagree with it. So we did not disagree with it when it was presented in the summary judgment papers of the appellate. Clearly, after they submitted their response brief and then, you know, pulled the cover off of what they thought distinct meant, we disputed that there was some kind of disclaimer or disavowal or requirement that distinct meant that this was a separate member, that a zipper, a spout and zipper were separate members. And to answer your question, Judge Chun, like distinct in this context means you look at the figures, you look at Figure 5, for example, at Appendix 39, 5A, and there's a feature that you can see in that drawing of that tumbler where if you ask where is the spout, I think that any reasonable mind can kind of look at where a spout is on that tumbler. It's the part that's pointed to by 53, and that means it's distinct as part of the container, right? It's a distinct portion of the container that you can identify as a spout. And so every embodiment that includes these zipper members, that's Figures 5, 6 and 7, show the spout as this distinct feature, both above and below where these zipper members meet. For Figures 5A, B and C, the spout is 53. For Figures 6A, B and G, the spout is 63. And for Figures 7A and B, the spout is element 73. I'd like to take a look at one of these in particular, and that's Figure 5B at Appendix 40. This one is one that was argued at great length in the briefing below. It shows the spout 53 as including the portion of the zipper members that cross over each other at the tip of the container. Importantly, at Column 821, the patent specifies that Figure 5B is a cross-section view. So that means if you compare it to Figure 5A, it's kind of chopped. There's a cross-section sort of horizontally, and that's where the zipper members are, because in 5B we see the zipper members. So when 5B points to that intersection as 53 where the spout is, it is literally pointing to the zipper members. That's the cross-section. It's showing zipper members 57, 58. And so this confirms that the spout 53 in this embodiment is identifying a portion of the zipper members where they cross near that tip as part of the spout. The district court's construction makes the zipper members in the spout mutually exclusive. If you read what the district court did, if there's a portion of a zipper anywhere near the spout, then it seems like the district court concluded there absolutely cannot be a spout. And so the result is that none of the illustrative embodiments would literally meet the claim as construed. The claim language, so this can't be correct, because even the court appeared to concede that cross-sectional views, 5B and 5C, show the zipper as part of the spout. This is at Appendix 11. The court stated that it's clear that the spout at 53 is separate from and above the zipper members 57 and 58, although it may appear otherwise from a cross-sectional top view. So even the court equivocated in saying from the cross-sectional views, it may appear that the spout is not a separate portion from the zipper members. So based on that, plus the claim language, the claim language which does not counsel otherwise, other than, you know, we admit that there may be a presumption under Becton, Kiyosera, that this differently claimed elements may be distinct features. But as we argued in the red brief, because of these other disclosures, because the specification shows the spout and the zipper as being part of the spout, we're more like the Powell v. Home Depot case where if the specification discloses member, you know, one feature as a sub-element of another feature, then that overcomes the Becton-Dickinson presumption. I see I'm running out of time. I'd like to reserve the rest. I just will say in closing that on the non-infringement issue, once this claim construction issue is corrected, the result becomes clear. The district court simply ignored our evidence, including documentary evidence and physical evidence, of physical spout and zipper members in the accused product and instead granted summary of non-infringement, finding that no reasonable juror could find that there was a spout in the accused product. That was error. That was based on the wrong claim construction, and that should be reversed. Thank you. Okay. Thank you, counsel. Mr. Dufresne. Thank you, Your Honors. Mr. Dufresne, please, the Court. I will start with the jurisdictional issue quickly, unless the Court would rather go to something else right away, but as far as the notion that a motion to substitute is prohibited, the case that we had cited in our brief was the L'Oreal case. Do you oppose the joinder motion? We would not oppose a joinder or substitution motion. We don't see any problem with doing that. That is where I was headed. Glad you got there. Okay. Move on. As to the claim construction, that was where the bulk of the discussion was so far today on the merits, we submit that the district court construed this term correctly, in particular in its view that the zipper members and the spout are separate structures. That is right there, as Judge Chung pointed out, in the construction that everyone agreed to, that they are distinct structures in the agreed ordinary meaning of this term, spout. And the claims themselves and the rest of the intrinsic record reinforce that ordinary meaning many times over. So the claims themselves... Well, hold on. Did the construction conclude they're distinct structures or that the spout has a distinct feature, i.e. it performs a particular thing? I'm not necessarily reading the court's construction to absolutely exclude the spout being a portion of the zipper. So what the court said, I believe this is on Appendix 9, Appendix 12, I'm sorry, Your Honor. The court construed the spout to mean a distinct feature. So not that the spout has a distinct feature, but the spout itself is a distinct feature that directs liquid from and facilitates the pouring of liquid from a container. So the court construed that term in accordance with its agreed ordinary meaning. This is on Appendix 9. The court talks about the ordinary meaning on Appendix 9 and not on Appendix... No, I'm just looking. Appendix 9, the top two lines. The court agrees with the parties that the term spout is properly construed as a, quote, distinct feature that directs liquid from and facilitates the pouring of fluid from a container.  Okay. The court restates that on Appendix 12 after going through the analysis of the arguments the patent owner made. So that construction sets out that the spout is itself a distinct feature. And that is entirely consistent with the way the term is used in the claims themselves and in the figures of the patent and the specification in general. So how do you deal with the 5B and C argument? So 5B and C are at Appendix 40 and 41. And when the specification talks about those, it explicitly says that those are... Give me a column and line number, please. Column 8? Mm-hmm. Lines 21 to 22 and 44 to 45. The inventor is telling us that those are top cross-sectional views. And they are top cross-sectional views of the embodiment that's shown in Figure 5A, which is at Appendix 39. And that is the figure that is much more informative on the position of the spout, as the inventor was calling it out, which clearly shows the spout as a reference numeral 53 there. And that is apart from, distinct from, separate from where the zippers would go in this embodiment. Is your position that the zippers cannot be in part on the spout? If so, I don't understand why that would be your position. The spout is the structure where the rest of the container takes a shape suitable for liquid pouring. And stuff can be on that without being the same as the spout. Like the zipper can come, lie on the spout, just as it lies on the area around the spout, which is the circumference that is almost a circle, except for the pointy part where you're going to pour from.  So to be clear, the specification and the claims talk about the zipper being proximate to or terminating at the spout. That's language used in these claims. Why does that? They don't need to be necessarily far removed from each other. But the argument that's been presented in this case for infringement is that the zipper is the spout. If I said a train line terminates at a station, I wouldn't be excluding the rails from the station? Correct. So to be clear, I don't disagree with Your Honor that the spout and the zippers can be in the same proximity. They can be in the same area. But the argument that's been made here is that the spout itself is, or that the zipper member is itself the spout. That's what you see in all the figures that the Patentee has annotated where they show the outside little edge of the zipper members and identify that as being the spout. And the claims and the claim construction prohibit that because the claims recite the spout as being in a separate portion of the claimed container. So there's a container portion and a zipper portion. The spout is in the container portion, not the zipper portion. So by the terms of the claims, we need a spout in the container portion. The zippers cannot themselves be the spout because they're in the zipper portion. I don't think that's disputable. It's also consistent with the way the spout is depicted in all of these figures in the Patent, including Figure 5A, including Figure 6A and 7A, where the spout is shown as being this pathway or channel that Your Honor is talking about. If the spout, if the two zippers come together to form the spout, you don't think that's covered? If the two zippers themselves form the spout, I do not think that's covered because then the spout would be in the zipper portion of the container. And that is not how it's recited in this claim. It clearly recites there is a zipper portion and then there is the container portion that has the spout in it. So in the context of this claim, I don't think that's permissible. It's also inconsistent with the ordinary meaning that the Court gave us as being distinct and separate from the zipper members and from other features of the container. You referred to the depiction moments ago. Is it relevant that the diagrams seem to show an actual spout versus the endurables? I think that's absolutely relevant, too. The figures show something that is consistent with what the District Court called a spout, which is consistent with, I think, the ordinary understanding of a spout, which is something that is like a channel or a tube or some other kind of pathway for water to flow and be directed from the container. That is how the spout looks in these pictures. It's how the spout looks in the picture on the Council table here today. Just pointing to a bag with zippers does not look like what anyone would consider the ordinary meaning of a spout. It would also mean that the spout term is essentially meaningless. Any zippered bag that's been in the prior art or in existence out there would have a spout if you could just have crossing zipper members in some edge of a container and have that be a spout. There are no further questions. I'll cede the rest of my time. Thank you, Mr. Dufresne. Mr. Bannon. Thank you, Your Honors. I'll make it quick. I think what's telling is that when Mr. Dufresne was asked about Figure 5B, he didn't answer the question. He said, look at Figure 5A. But Figure 5B clearly shows 53 pointing right at the intersection of the zipper members 57 and 58. That's, I think, dispositive and shows that what the Court did here in saying that a zipper member cannot be any part of a spout is simply incorrect. There was a little twist in the argument that Mr. Dufresne made in which Apelli made in his brief, and I think there may be some confusion about what Zip Top was arguing, and that is Mr. Dufresne said the argument is that the zipper member is the spout. But that is not what we are arguing. We're not saying the zipper member is one in the same with the spout. We're simply saying that it can be part of the spout. That's the Powell v. Home Depot case. I think that controls in this case, and for that reason, I think that this Court can find that the claims construction was erroneous by excluding any spout from being part or any zipper from being part of the spout. Thank you. Counsel, the case is taken under submission.